Your honors, my name is Carl Gunn. I'm representing Mr. Johnson in this appeal. There's cases going back to Terry v. Ohio at the very beginning that describe the suspicion required by the reasonable suspicion standard as first a reasonable articulable suspicion and second not a quote gut feeling unquote or quote hunch unquote. What the officer said at one point in his testimony in this case directly contrasts with that. He testified, quote, I guess I can't articulate everything that was crossing my mind at that point but there was something I knew that there was something that was not right about the stop. Counsel, with respect, I kind of divide this case in two parts and I'm looking primarily at the Rodriguez case recently from the Supreme Court. The original mission was to stop, do the check. That was completed and when the officer went back to do the criminal background check you had a new question and that was under the totality of the circumstances did the officer then have reasonable suspicion of drug trafficking to extend the traffic stop. That's really what we're talking about, isn't it? Yes. Okay. I think it is, your honor. So under those circumstances and you look at all of the things that he was dealing with there, I don't necessarily need to highlight everything, but the, you know, the phones, the lack of identification of the female, the cost of the rental, etc. etc. etc. Why didn't that constitute reasonable suspicion in the second part, if you will, of this stop? Well, let me start with some of the general standards, your honor. What the cases of this court say is, first of all, there's a number of cases that recognize that you need more than broad profiles that cast suspicion on broad categories of people. You need something that separates out the person who stopped or the person in this case who's being detained beyond just the have like that here, is one way of looking at this case. Well, coming from California isn't that sort of factor. That covers 10% of the people in the Union. And in fact, later in the excerpt, he's telling the passenger it's not just California, but Oregon and Washington and Nevada. So it's the whole West Coast. Using air freshener isn't that sort of factor. One of the cases, I cite a King case in the brief, talks about a proliferation of things that hang from people's rearview mirrors nowadays. Driving on Interstate 94 isn't that sort of factor. That's one of three main cross-country routes through Montana. Driving a rental car isn't that sort of factor. Lots of people drive rental cars. We don't divide and conquer. Our case law is clear that we look at the totality here. I mean, I know you've mentioned some of the a bit more benign factors, but let's talk about the number of cell phones. All right, your honor. In conjunction, just if we look at the number of cell phones, I don't know if they, what he specifically, I think the officer also observed a particular type, I guess it was a flip phone, that in his experience, which we have to factor in. In my experience, your honor. Okay, good, okay. Then also the laundry detergent plus the fresheners. And then I think he also knew that the passenger had a drug conviction. Well, let me, let me take each of those, your honor. Okay. And I agree you consider everything together. And the next thing I was going to say, even all those factors I just went through combined. But I'm just, even if you, because you've highlighted the kind of the more benign ones, but we have to then roll in on top of what I just identified. So I just want to hear your best case or your best argument in response to that. I do cite a case in my papers that basically says having three cell phones instead of two for two people is deserving of very little weight, I believe. Some language like that. You, again, you're going back to, to trying to break this down. The question is, when even if four, even if all of the elements were innocent or could lead to an inference of innocence, the judgment that has to be made is a totality of circumstances. Right. So perhaps it's a case where zero plus zero adds to one. But that's, that's the mandate. Right. Except zero plus zero really never adds to one. 0.1 plus 0.1 can get you to 0.2 and eventually to 1.0. But I think any time you analyze these, even the Supreme Court case that cited in the supplemental authority, I think it's the Wesby case. It goes through the factors one by one. I mean, that's really the only, now I agree at the end you have to look at them all together. But to get back to your, your question, Judge Merguia, the three cell phones instead of two, I just don't think. I think it was four. No, well, it was only three, Your Honor, until later. He didn't find the fourth one until after he'd already, I think, done the dog sniff. So it's three. You basically have one extra cell phone for two people. One of them's a flip phone, which, for example, could be an old phone that had been replaced with a more modern phone. There's other people who sometimes carry two phones. Maybe someone who does drywall work and gets called on various drywall jobs might want to get a, you know, have one for his contractors and one for his people. The thing that really got highlighted by the officer was this idea that it was a track phone because track phones, I guess you don't have to supply identification to get them. But he didn't know this was a track phone. He just made an assumption that a flip phone was a track phone. Counsel, with respect, you need to argue your case the way you want, but I certainly, for me, and I think you're hearing it from the rest of my colleagues, is we look at the totality. You're picking out the weak links in the totality. You haven't talked about all these things, but are we dealing with the fact, though, that once he went back to check the criminal history, he had a new mission, if you will, using the Rodriguez language. The question is, did he have reasonable suspicion? And when you start looking at the totality of all of these things, and not just the little stuff that you mentioned, but the lack of identification, the cost of the rental car, no observable luggage, the fact that the young woman said she was going to get a job had no identification, which would probably meant she couldn't get a job. The fact he said he was a drywaller with a clean car. It's all little stuff individually, but when you aggregate them, didn't he have reasonable suspicion? I don't think so, Your Honor, because a number of those factors you just went through really weren't things he knew about. No luggage in the car, he didn't know that. All he saw was the back seat. He couldn't see the cargo area. So that's a no factor, because he didn't know there was minimal luggage in the car. On the cost of the rental, and in particular the length of the rental, which is what made him suspicious, yeah, that's an unusual fact. I agree, that unusual fact that separates people out has to be a fact that suggests drug trafficking, and renting a car for three months is not something that suggests drug trafficking. There was no articulation of any reason a drug trafficker would rent a car like this for three months. For $850 a month? Which for two months would be $1,700, and for three months would be about $2,500. But remember the type of area we're dealing with. We're dealing with a boomtown economy, and we're dealing with someone from California who might have only... Californians, you got to watch out for them. Yeah, I know, I know Your Honor. And it's not just California, it's Washington, Oregon, and Nevada too. But you're dealing with a person going to a boomtown economy. This idea that you could buy a car for two or three thousand dollars, you know, I wouldn't buy a two or three thousand dollars car and then want to go on a 1,700 mile trip to Minot, North Dakota from Bakersfield. You know, that kind of car you're going to get might not make that trip. I might not want to invest in a car long term because the employment in Minot might be sort of not real permanent employment because of the boomtown economy. So the problem with that factor, and the reason it didn't contribute anything at all, is there was nothing to suggest how and why it tied into drug trafficking. Other factors, the prior conviction of the passenger was something he didn't know about until he'd already extended the stop. That's in 19 minutes in the minute counter, and he decided Mr. Johnton was not impaired at about 11, 30, or 12 in the minute counter. The case before us runs from the time that the officer first goes to the vehicle until that initial encounter ends when he returns to the vehicle to look at what facts or circumstances he learned during that initial interaction. Yes, and I'd even give the government, your honor, that it probably goes until he goes back and decides Mr. Johnston isn't impaired. Remember, he goes back to the car and decides Mr. Johnston isn't impaired. I'd give the government that, but at that point, once he decides Mr. Johnston isn't impaired, that's when the mission of the traffic stop stops, and he doesn't have any business asking these additional questions where he gets a little more information. He doesn't have any business waiting for a record check on the passenger. Now, your honor, I think mentioned the no identification of the passenger, and I think one of the other factors about the passengers. I don't think anything about that suggested drug trafficking, and I'm not even sure the government suggested it did. They had this fallback argument about human trafficking, but your honor, this officer had no training and experience at all about human trafficking that he pointed to. He pointed out what he called a significant age difference, but nothing about why that suggested human trafficking, and by the way, I'm sorry. Are we talking about a reasonable officer under these circumstances, or are we talking about what was inside this officer's head? No, we're talking about a reasonable officer and whether a reasonable officer would have had a reasonable suspicion based on training experience of human trafficking. He had no training experience. So, what's the reasonable officer? What does the reasonable officer know about the Mann Act, for example? Doesn't a reasonable officer, particularly a highway patrol person, know something about that? Maybe, but what did he have to suggest there was a Mann Act violation? An age difference? He didn't say anything about how that suggested trafficking. A younger white female with no identification. I don't think, I guess, reasonable suspicion to some extent is in the eye of the beholder, but... The reasonable officer beholder. Right, but he never articulated why any of those factors he pointed to suggested human trafficking. He never said anything. The age difference here is not like we had an 18-year-old. Do we focus on what he articulated months later with the basis for the stop, or do we place him on the scene and see what facts he had learned there? Isn't that the focus of the inquiry? You look at the facts he had at the time and how... Not what he said several months later was the reason for it. How he would have had a reasonable officer would have interpreted those facts. There are four factors that were arguably pointed to that he seemed to think suggested human trafficking. The age having an ID, but he didn't say how that suggested trafficking. The fact that passenger was going to work, in his opinion, it would be hard to find a work without ID. He didn't suggest how that showed trafficking. That they'd only met recently. He didn't suggest how that showed trafficking. To me, someone who's a working prostitute for a pimp would probably be someone he didn't know, hadn't met just recently. The way he put it, it sort of stands out. At one point, this is at Excerpt of Record 53, was, quote, for all I know, she may have been being trafficked. This, again, was just... Oh, the Supreme Court said the threshold is not particularly high. Either the Ninth Circuit or the Supreme Court. Yes. On the other hand, it is higher than a hunch. It is higher than I just knew something wasn't right. It is something that has to be able to be articulated. On the human trafficking, there was no articulation at all about how these factors showed human trafficking or suspicion of human trafficking. I'm trying to think if there's any other factors your Honors mentioned that I haven't addressed. The thing to remember is which of these factors... several of the factors they didn't know about at the time he decided to extend this time. He didn't know about minimal luggage in the vehicle. He didn't know about the passenger's prior conviction. He didn't know about multiple trips from California. So all those can't be considered at all in the reasonable suspicion totality because that's not information he had before he extended the stop. The other factors... this expensive car rented for a long time. There was no suggestion about how that showed drug trafficking. I would think drug traffickers would want a different car every time so they don't get, you know, they don't get their car tied into these multiple trips. Let me ask, any of my colleagues have additional questions? All right. Thank you, Counsel. So we'll hear from the government. Thank you, Your Honors. Good morning, Your Honors, and may it please the Court. John Sullivan for the United States. In this case, the appellant's arguments really are grounded in this hyper-technical divide-and-conquer analysis that the Supreme Court has repeatedly instructed the lower courts to avoid. In this case, we do have to look at what the officer knew at the time the mission of the traffic stop ended. In the government's view, that's about 12 minutes and 30 seconds of the traffic stop video. That's the point at which Trooper Quinnell asked Mr. Johnson out of the vehicle and was able to confirm that he was not impaired. And so at that time, everything that occurred after that had to be justified by reasonable suspicion. In the government's view, all of these factors we've been discussing this morning cut in favor of a finding that he had reasonable suspicion in this case. When you talk about some of the more benign factors, Judge Merguia, the way I break them down is there are some general factors in this case and there are some specific factors. The general factors are, like he's coming from California in a rental vehicle on an interstate. Those things apply to a lot of people. But the specific factors in this case are where Trooper Quinnell's, you know, the alarm bells were really going off for him during the course of this traffic stop. That's the cost of this vehicle, that it's a large, inefficient vehicle for making such a long trip. Mr. Johnson said that he was a drywaller, but there was no sort of objective manifestation of anything in the car that would corroborate that. You know, why was he renting such an expensive vehicle as a manual laborer if he's not hauling any tools, if he's not, you know, having any drywall in the car? Trooper Quinnell explained how that's a dusty, dirty profession that would leave some trace in the vehicle if he were using it for his work car. The fact that he's got multiple cell phones, Trooper Quinnell said he believed it was a track phone, which Mr. Johnson later confirmed at the 37-minute mark of the It's pretty difficult to find legitimate work if you don't have any identification at all. The fact that there was multiple air fresheners in this car and then laundry detergent in the back seat, I mean, those are used as cover odors for drug traffickers. And so, you know, you see those in a lot of vehicles, but you don't see them in rental vehicles, as Trooper Quinnell testified to. So all of those facts are unusual. His human trafficking concerns obviously were here on an objective standard. He didn't include that in his report at the time, but there are objective facts that support his testimony at the suppression hearing that he had concerns about human trafficking, being that she had no ID, there was a significant age difference, and that they barely knew each other. So all of those things are indicative of possible human trafficking. Now, in addition to the suspicion of drug trafficking, he had to have particularized and objective bases for believing that criminal activity was occurring, which certainly includes both drug trafficking and human trafficking. Now, I agree with my colleague that there are a couple of things the court should not consider or need not consider in the reasonable suspicion analysis. That is that Lisa Andrade had a methamphetamine-related conviction. Trooper Quinnell learned that after the mission of the traffic stop ended, and also the fact that Michael Johnson said that it was his third trip since May. So those things he learned after the mission of the traffic stop, and the court need not consider those. But when you take all of the factors, both the general factors I've discussed and the specific factors that relate to Mr. Johnson, there's more than sufficient reasonable suspicion in this case to extend the There are no questions from the panel. I will submit on behalf of the government and simply ask that the court affirm. Any questions? I think not. Thank you. Now, counsel, we let you go over time, but since he doesn't use as much, we'll give you one minute because we know that you have something great for us. Isn't that correct? Well, Your Honor, you decide. You're the judges. There are just two points I want to respond to. First of all, on the multiple air fresheners, I just want to refer the court to the opening brief, which says give those little wait. Remember, we're not talking about a short-term rental here of just a week where it might not make sense to have an air freshener. We're talking about a three-month rental where you might want to have one. I did want to go back to the drywall employment because, like the track phones, that's a place or a factor where the officer was making assumptions that weren't based on his training and experience or any specialized training experience, was making assumptions on his anecdotal experience. He didn't have any specialized training about drywalling or contractor practices. What he was doing was making assumptions based on his own personal experience with drywall and others he was, quote, familiar with, unquote. He couldn't consider those? I don't think in this context he could extrapolate to assume it was true of everyone. First of all, the assumption that all drywallers are independent contractors who'd have their own tools in the car, no. Plus, he didn't know, for all he knew, Mr. Johnson had tools in the cargo area that he couldn't see. Okay. I think we've let you on a little bit extra. The time is up, but we thank you very much for your argument. We know you want us to divide and conquer, and we have that well in mind. We thank you and the government for the argument. The case, as argued, is submitted, and the Court stands in recess for the day. Thank you.
judges: M. Smith, Murguia, Robreno